UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JAMES DIGGS, SR.,

                              Plaintiff(s),                      **ORDER**
                                                                                         CV07-4430 (DRH)(WDW)

       -against-

NEW YORK MARINE TOWING,

                              Defendant(s).
------------------------------------------------------------------X
**WALL, Magistrate Judge:**

      Before the court on referral from Judge Hurley is a motion by the plaintiff, James Diggs, for Maintenance and Cure. DE[27] & [29]. The motion is opposed by the defendant, New York Marine Towing. DE[28]. For the reasons set forth herein, the motion is granted in part and denied in part, finding that the plaintiff is entitled to maintenance of $54.65 per day for the period 5/19/07 to 9/3/07 and $30.65 per day for the period 9/4/07 to, the date of maximum cure. The plaintiff is also entitled to all outstanding payments for cure, mileage and prescriptions. The court cannot, however, on the record before it, determine that the defendant was callous, recalcitrant, or willful so as to entitle the plaintiff to an award of attorney's fees, and that part of the motion is denied without prejudice to renewal, either before a jury or on a more complete record, with or without a hearing on the issue.

## DISCUSSION

      This action arises from an injury to the plaintiff's knee that happened on May 19, 2007, when he worked as a deckhand on a tug owned by the defendant, and is governed by principles of maritime law, specifically, a seaman's rights to maintenance and cure. Here, the plaintiff seeks an increase in the rate of maintenance that has been paid, payment of certain other expenses, including outstanding cure invoices and travel expenses, and attorney's fees.

Maintenance: The right of maintenance generally entitles an injured seaman to "reimbursement for the cost of food and lodging comparable to that received aboard ship," subject to certain limitations. *Gillikin v. United States,* 764 F. Supp. 270, 271 (E.D.N.Y. 1991) (citing *Calmar S.S. Corp. v. Taylor,* 303 U.S. 525, 528)). The seaman may recover maintenance only for the period from the date of injury to the date of maximum cure, and may recover only expenses actually incurred, whether paid or expected to be paid. *Id.* (citations omitted). Moreover, he may recover only those expenses relating to himself; "the shipowner is not required to support anyone other than the seaman himself." *Id.* at 271-72 (citing *Macedo v. F/V PAUL and MICHELLE,* 868 F.2d 519, 522 (1st Cir. 1989)). To recover maintenance, the seaman must produce evidence sufficient to provide an evidentiary basis that will allow the court to estimate his actual costs. *Hall v. Noble Drilling (U.S.), Inc.,* 242 F.3d 582, 590 (5th Cir. 2001). But a court may award "reasonable expenses even if the precise amount of actual expenses is not conclusively proved." *Id.*

Here, the primary dispute concerns the amount of daily maintenance, which has been paid at the rate of $15 per day. In June 2007, the plaintiff, through his attorney, requested $25 in maintenance, but was told by defense counsel that pursuant to a local union collective bargaining agreement, the applicable maintenance rate was $15 a day, a figure that the plaintiff accepted at that time. DE[28], Ex. F; DE[27], p. 2, ¶8. The plaintiff now seeks a rate of $64.13 a day, based on two components: "(1) food based on the official USDA food plan, i.e., $289.50 per month . . . and (2) lodging, including utilities." DE[27], Pl's Mem. in Supp. at 8. The defendant argues that the $15 a day already paid is sufficient and reasonable, and that the plaintiff is bound by his acceptance of that rate. DE[28] at 4. The defendant does not provide any legal basis for the argument that the plaintiff is bound by his acceptance of the $15 rate, and the court does not so

2

find. Thus, the court turns to the computation of the proper maintenance amount.

The law on the proper amount of maintenance has been found to be "anything but 'crystal clear.'" *McMillan v. Tug Jane Bouchard,* 885 F. Supp. 452, 463 (E.D.N.Y. 1995) (quoting *Ritchie v. Grimm*, 724 F. Supp. 59, 61 (E.D.N.Y. 1989)). Some courts have awarded a "customary amount," as established in prior cases or set forth in a collective bargaining agreement. *Id.* "Other courts have awarded higher rates based on a seaman's actual living expenses." *Id.* (citing *Incandela v. American Dredging Corp.,* 659 F.2d 11, 14 (2d Cir. 1981)). Generally, the Second Circuit has adopted an approach "wherein the amount of maintenance is determined after giving consideration to plaintiff's prima facie showing of his or her actual living expenses and defendant's evidence in rebuttal showing feasible alternatives in the same community." *Id.* (citing *Incandela*).

The Fifth Circuit has explained that a court determining the amount of a maintenance award must follow three steps. First, the court must determine the amounts of the seaman's actual costs of food and lodging and the reasonable cost of food and lodging for a single seaman in the locality of the plaintiff. *See Hall,* 242 F.3d at 590. In determining the reasonable costs of food and lodging, the court may consider evidence in the form of the seaman's actual costs, reasonable costs in the locality, union contracts stipulating a rate, and maintenance rates awarded to other seamen in the same region. *Id.* Next, the court must compare the plaintiff's actual expenses to reasonable expenses. If actual expenses are greater than reasonable expenses, the reasonable costs should apply; otherwise, actual expenses should be awarded. In other words, the seaman is entitled to maintenance in the amount of his actual expenses for food and lodging up to the reasonable amount for their locality. Third, the court should consider whether the

3

plaintiff's actual expenses were inadequate to provide him with reasonable food and lodging. *Id.*

Underlying the determination of the proper amount of maintenance is the question of the extent to which the amount must be prorated, if at all. The plaintiff argues that there should be no proration, and the defendant argues that all amounts must be prorated. While it is true that maintenance is intended to cover only the seaman's food and lodging expenses, strict proration is not required for all expenses, and reasonableness, rather than strict proration, should be the guiding principle, especially in regard to lodging costs. As enunciated by the Fifth Circuit, "[r]easonableness, not proration, is the proper limit on maintenance awards for seamen living with their families. The concern motivating proration is that a seaman with a large house for his family should not be reimbursed for the cost of a home so far in excess of his individual needs. But the requirement that maintenance be limited to the reasonable expenses of a singe seaman dispenses with this concern." *Hall,* 242 F.3d at 589; *see also Fuller v. Calico Lobster Co., Inc.,* 527 F. Supp. 2d 184, 187 (D. Mass 2007) (citing to *Hall* and noting that the Fifth Circuit is a "court particularly conversant with maritime law"). Applying this reasoning, the court in *Ritchie* awarded a seaman residing with his family the full amount of rent paid, finding that "it is reasonable to award Ritchie the full monthly payment since it is likely that Ritchie would pay the same amount in rent even if he alone resided in the apartment." 724 F. Supp. at 61, n.1; *compare Gillikin,* 764 F. Supp. at 271-72 (prorating all expenses, including lodging costs). The court in *Hall* did note, however, that if "division of family food expenses is difficult, prorating the costs is an appropriate method of estimation." 242 F.3d at 588-89.

With this in mind, the court turns to the lodging expenses claimed by the plaintiff. Mr. Diggs lived in a house with his wife and child from the date of his injury until 9/3/07, when he

4

moved to an apartment. Mr. Diggs claims that while he lived in the house, he paid a monthly mortgage payment of $1395, used propane at a cost of 64¢ per day, and incurred electricity costs of approximately $3.36 per day and homeowner's insurance premiums of approximately $4.05 daily; in the apartment, he paid $650 a month rent and $3.26[1] per day for electricity. *See* DE[27] at 8-9.

Diggs argues that he is entitled to the mortgage payment and attendant housing costs for the entire maintenance period, because it was the defendant's recalcitrance in paying him that caused him to lose his home and move to a rental unit. *See* DE[27] at 7 (citing *McMillan,* 885 F. Supp. at 463-66 (E.D.N.Y. 1995)). In *McMillan*, the court awarded the seaman, who lived for free with family and friends during the maintenance period, a higher amount than his rent-free status would have demanded, based on the "economic necessity" created by the defendant's failure to pay him maintenance and cure, reasoning that "a shipowner cannot escape its liability for maintenance by forcing an injured seaman to involuntarily seek the financial support of family and friends during his or her convalescence." 885 F. Supp. at 465.

The defendant does not challenge the proposition that a seaman could, where he has been forced into diminished circumstances by the shipowner's failure to pay him maintenance, be awarded an amount that exceeds his actual costs. The defendant notes, however, that Mr. Diggs' mortgage statements and gas bills "show a persistent pattern of late payments," that predated his

---

[1] This figure is based on an average of $97.92 in monthly electric costs. *See* DE[27] at 8; Diggs Aff., Ex. 5. Although the court cannot determine precisely how the plaintiff arrived at that number from the electric company statements, it is a rough average that the court will accept. The defendant notes that the plaintiff's wife testified that their average electric bill was $70 per month, but has provided no citation to the record for that testimony, and the pages of Mrs. Diggs' deposition attached to the defendant's papers do not appear to contain that testimony. *See* DE[28] at 4, n.2; Ex. E.

5

injury, and that the house, which was bought in 1991 for $52,000, had been re-mortgaged twice by 2007, the last time for $138,000. Under these circumstances, the defendant argues, it would be unreasonable for the court to require maintenance payments "based upon a home the seaman could not afford to live in when he was healthy." DE[28] at 6, n.4. The court finds that there is insufficient evidence that Mr. Diggs and his family lost their home solely as the result of delayed maintenance payments by the defendant, and declines to base the lodging element of the maintenance amount on the mortgage payment for the entire period. Instead, the reasonable amount of maintenance should be determined considering the full mortgage payment and other home-related expenses (propane, electricity, insurance[2]) from the inception of the period up to 9/07, and on the rental amount thereafter.

Accepting the full amounts of lodging expenses set forth by the plaintiff, the daily actual cost for the earlier period would thus be $53.95 per day, and for the later period, $24.92 per day. Neither party has given the court a basis for determining what, specifically, would be reasonable costs in the plaintiff's locality, rural Matthews, Virginia. The defendant has stated that $15 a day is a common amount of maintenance set forth in collective bargaining agreements. It is not clear, however, that such an amount appears in the defendant's agreement with its union seamen and is, in this court's opinion, an unreasonable amount in today's economic setting. *See Hall,* 242 F. 3d at 591-92 (discussing upward trends in maintenance awards). The court, giving consideration to plaintiff's showing of his actual expenses and the defendant's arguments as to the

---

[2]The court notes the defendant's alleged assertion that insurance and propane should not be considered part of maintenance(see DE[27] at 3, ¶19 and Ex. P), but *Gillikin* expressly held that "heat, electricity, homeowner's insurance and real estate taxes are each necessary to the provision of habitable housing and may therefore each be recovered as a lodging expense" in the computation of maintenance. 764 F. Supp. at 273.

unreasonableness of those amounts in the community where Diggs lives, as well as to the fact that the plaintiff's original demand was for $25 a day, determines that a reasonable maintenance lodging award would be $45 per day for the period from 5/19/07 to 9/3/07 and $21 per day from 9/4/07 to the date of maximum cure.

The food expenses are awarded for Diggs' costs alone, not his family's. The plaintiff bases his claimed food costs on the USDA food plan, seeking $289.50 per month, or $9.65 per day. DE[27] at 8, Ex. X. That figure is the allowance under the "Liberal Plan" for a female age 19-50, but the court will accept it as the reasonable estimate of Mr. Diggs' food costs. Adding that figure to the lodging costs, the court determines that the plaintiff should receive $54.65 per day for the earlier period and $30.65 for the later period.

Cure, Mileage and Prescription Costs:

The plaintiff also seeks payment of all outstanding mileage submissions at the rate of 48.5¢ per mile for 1562 miles, payment of outstanding cure invoices, including a hospital bill for $7,181.50 and expenses paid by charity in the amount of $5,742.42, and reimbursement for any outstanding prescription invoices. *See* DE[27] at 9, Ex.D. The defendant claims that it has paid some of these expenses, but it is impossible for the court to determine from the record before it precisely how much has been paid and how much is owing. The defendant does not offer any argument that it is not responsible for these costs, and the court orders that the defendant pay all outstanding amounts.

Attorney's Fees:

A seaman is entitled to attorney's fees in a maintenance action where the employer has been "callous" or "recalcitrant." *Incandela,* 659 F.2d 11 at 15 (citing *Vaughan v. Atkinson,* 369

7

U.S. 527, 530-31 (1962)). Here, Diggs seeks such an award. The Second Circuit has noted that "[o]rdinarily, the issue of callousness is for the jury, whereas the amount to be awarded is better left fo be determined by the court." *Id.* (citations omitted). The basis for the attorney's fees award is, like the law on the amount of maintenance, "far from crystal clear." Fourteen years after the Second Circuit issued its decision in *Incandela*, the Fifth Circuit considered whether *Vaughan* intended the attorney's fee award to be punitive or compensatory, and noted that seven Supreme Court decisions subsequent to *Vaughan* treated that decision as "supporting an exception to the 'American Rule' that litigants generally must bear their own costs," and noted that in the "1967 Meir Brewing case, the [Supreme] Court read Vaughan as establishing a compensatory basis for fee-shifting." *Guevara v. Maritime Overseas Corp.,* 59 F.3d 1496, 1501-02 (5th Cir. 1995)(citing *Fleischman Distilling Corp. v Maier Brewing Co.,* 386 U.S. 714 (1967)). Since *Maier Brewing*, *Guevara* found, "Vaughan has come to stand for the proposition that attorney's fees can be awarded to a prevailing party when his opponent has engaged in bad-faith conduct <u>during litigation</u>," thus creating a question of whether conduct outside the litigation conduct could be considered. *Id.* at 1502 (emphasis added) (citations omitted). Ultimately, the Fifth Circuit noted, all it could "confidently say about Vaughan is that it entitles an injured seaman to recover attorney's fees – perhaps as part of compensatory damages – when his employer willfully fails to pay maintenance and cure."

      Whatever the final interpretation of *Vaughan* might be, here, the court finds that, on the record before it, no determination can be made as to the defendant's callousness or recalcitrance or willfulness. Too little factual background and too little legal argument has been provided to allow for a reasonable determination. That determination may ultimately be made by a jury or on

a future, better supported motion, but it cannot be made now.

Dated: Central Islip, New York
       July 24, 2008

**SO ORDERED:**

 /s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge